1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   Novato, California 94948-6169
4  (415) 898-1555
   (415) 898-1247 (Fax No.)
5

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12  SHIRLEY CRONIN, as Wrongful Death          )   No. C 08-3274-MMC
    Heir, and as Successor-in-Interest to      )
13  RAYMOND C. CRONIN, SR., Deceased;          )
    and RAYMOND C. CRONIN, JR.,                )   COMPLAINT FOR SURVIVAL,
    ROBERT CRONIN, as Legal Heirs of           )   WRONGFUL DEATH - ASBESTOS;
14  RAYMOND C. CRONIN, SR., Deceased,          )
    ESTELA CARCALLAS, as Wrongful              )   DEMAND FOR JURY TRIAL
15  Death Heir, and as Successor-in-Interest to )
    FABIAN CARCALLAS, Deceased; and            )
16  FABIAN CARCALLAS III, OLIVER               )
    CARCALLAS , as Legal Heirs of              )
17  FABIAN CARCALLAS, Deceased,                )   _____
    PEGGY HOTT, as Wrongful Death Heir,        )
18  and as Successor-in-Interest to VIRGIL     )
    HOTT, Deceased;                            )
19                                             )
              Plaintiffs,                      )
20                                             )
    vs.                                        )
21                                             )
    TODD SHIPYARDS CORPORATION,                )
22  GENERAL DYNAMICS                           )
    CORPORATION, VIAD CORP., and               )
23  HAYLEY HOTT,                               )
                                               )
24            Defendants.                      )
                                               )

25

26                      I.

27                   PARTIES

28       1.      Plaintiffs in this action are the above captioned successor-in-interest to, or the

personal representative of the estate of decedents; and the personal representatives on behalf of

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

the legal heirs, or the heirs-at-law, of the decedents, and are all hereinafter referred to as "Plaintiffs". HAYLEY HOTT is an heir of VIRGIL HOTT, Deceased, and entitled to bring this action, however she is named as defendant in this action because her consent to be joined cannot be obtained.

2. The persons who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through their occupational exposure to asbestos, hereinafter "decedents" are, with their date of death: RAYMOND C. CRONIN, SR. died July 20, 2007. FABIAN CARCALLAS died December 25, 2007. VIRGIL HOTT also died December 25, 2007.

3. SHIRLEY CRONIN is the spouse of decedent RAYMOND C. CRONIN, SR., ESTELA CARCALLAS is the spouse of decedent FABIAN CARCALLAS, and PEGGY HOTT is the spouse of decedent VIRGIL HOTT, and are hereinafter referred to as "surviving spouse".

4. Each of these decedents sustained an asbestos-related lung disease and death by precisely the same mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at their jobsites.

5. The pathogenesis of each plaintiffs' asbestos-related diseases is explained on **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

6. All of plaintiffs' claims arise out of a similar series of occurrences: repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at decedents' worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the decedents, resulting in cumulative, progressive, incurable lung diseases.

7. Each plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on each individual decedents' worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by decedents, caused serious lung disease. The allegations of plaintiffs regarding the nature of decedents' asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of

1  disease, are all identical.

2         8.     Plaintiffs are informed and believe, and thereon allege, that at all times herein

3  mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

4  proprietorships and/or other business entities organized and existing under and by virtue of the

5  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

6  said defendants, and each of them, were and are authorized to do and are doing business in the

7  State of California, and that said defendants have regularly conducted business in the State of

8  California.

9  **II.**

10  **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

11         9.     <u>Jurisdiction</u>:  Plaintiffs SHIRLEY CRONIN, RAYMOND C. CRONIN, JR.,

12  ROBERT CRONIN, ESTELA CARCALLAS,   FABIAN CARCALLAS III, and OLIVER

13  CARCALLAS  are citizens of the State of California.    Plaintiff PEGGY HOTT is a  citizens of

14  the State of Florida.  Defendant TODD SHIPYARDS CORPORATION is a  corporation

15  incorporated under the laws of and having its principal places of business in Washington.

16  Defendant , GENERAL DYNAMICS CORPORATION, is a  corporation incorporated under the

17  laws of and having its principal places of business in Virginia.  Defendant VIAD CORP. is a

18  corporation incorporated under the laws of and having its principal places of business in

19  Arizona.

20       This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action

21  between citizens of different states in which the matter in controversy exceeds, exclusive of costs

22  and interest, seventy-five thousand dollars.

23         10.    <u>Venue / Intradistrict Assignment</u>.    Venue is proper in the Northern District of

24  California and assignment to the San Francisco Division of said district is proper as a substantial

25  part of the events or omissions which give rise to the claims asserted by plaintiffs herein

26  occurred  within the County of San Francisco, California, and all of the defendants are subject to

27  personal jurisdiction in this district at the time the action is commenced.

28  ////

1 ////

2

### III.

3

### CAUSES OF ACTION

4

#### FIRST CAUSE OF ACTION
(Negligence - Survival)

5

6 PLAINTIFF SHIRLEY CRONIN, AS SUCCESSOR-IN-INTEREST TO THE DECEDENT

7 RAYMOND C. CRONIN, SR. COMPLAINS OF DEFENDANTS VIAD CORP., THEIR

8 "ALTERNATE ENTITIES,"AND EACH OF THEM; ESTELA CARCALLAS , AS

9 SUCCESSOR-IN-INTEREST TO THE DECEDENT FABIAN CARCALLAS COMPLAINS

10 OF DEFENDANTS TODD SHIPYARDS CORPORATION, GENERAL DYNAMICS

11 CORPORATION, THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; PEGGY

12 HOTT, AS SUCCESSOR-IN-INTEREST TO THE DECEDENT VIRGIL HOTT

13 COMPLAINS OF DEFENDANTS COMPLAINS OF DEFENDANTS  TODD SHIPYARDS

14 CORPORATION,  THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM;  EACH FOR A

15 COUNT FOR NEGLIGENCE (SURVIVAL) ALLEGE AS FOLLOWS:

16      11.    At all times herein mentioned, each of the named defendants was the successor,

17 successor in business, successor in product line or a portion thereof, assign, predecessor,

18 predecessor in business, predecessor in product line or a portion thereof, parent, holding

19 company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

20 or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

21 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

22 supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

23 representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

24 warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating,

25 or otherwise directing and/or facilitating the use of, or advertising a certain product, namely

26 asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively

27 be called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the

28 tortious conduct of each successor, successor in business, successor in product line or a portion

1  thereof, assign, predecessor in product line or a portion thereof, parent, holding company,

2  affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned

3  entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

4  fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale,

5  supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

6  warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos,

7  and other products containing asbestos.  The following defendants, and each of them, are liable

8  for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a

9  virtual destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants,

10  and each of them, have acquired the assets, product line, or a portion thereof, of each such

11  ALTERNATE ENTITY; defendants, and each of them, caused the destruction of plaintiffs'

12  remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume

13  the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant

14  enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION<br>SEATTLE-TACOMA SHIPBUILDING CORP. |
| GENERAL DYNAMICS CORPORATION | CONVAIR<br>VULTEE AIRCRAFT INC.<br>CONSOLIDATED VULTEE AIRCRAFT CORPORATION<br>ASBESTOS CORPORATION LIMITED |
| VIAD CORP. | ARMOUR AND COMPANY<br>ARMOUR & CO.<br>ARMOUR & COMPANY<br>THE GREYHOUND CORPORATION<br>G. ARMOUR ARIZONA COMPANY<br>ARIZONA DIAL<br>111 CORPORATION<br>BALDWIN LOCOMOTIVES<br>BALDWIN LOCOMOTIVE WORKS<br>LIMA-HAMILTON CORPORATION<br>LIMA LOCOMOTIVE WORKS<br>BALDWIN-LIMA-HAMILTON CORPORATION<br>BALDWIN-LESSING-HAMILTON<br>THE MIDVALE COMPANY<br>THE DIAL CORPORATION<br>THE NEW DIAL CORP.<br>ALSTOM POWER, INC.<br>ECOLAIRE HEAT TRANSFER, INC, HEAT |

EXCHANGE DIVISION
ALSTOM HEAT EXCHANGE DIVISION
GRISCOM-RUSSELL (product)

12.　　At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

13.　　At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the decedents herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons".

14.　　Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

15.　　Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common

1  carriers, that in the shipping process the products would break, crumble, or be otherwise

2  damaged; and/or that such products would be used for insulation, construction, plastering,

3  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

4  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

5  breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the

6  release of airborne asbestos fibers, and that through such foreseeable use and/or handling

7  "exposed persons", including decedents herein, would use or be in proximity to and exposed to

8  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

9  persons working in proximity to said products, directly or through reentrainment.

10      16.      Decedents have used, handled, or been otherwise exposed to asbestos and

11  asbestos-containing products referred to herein in a manner that was reasonably foreseeable.

12  Decedents' exposure to asbestos and asbestos-containing products is on current information as

13  set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated

14  by reference herein.

15      17.      As a direct and proximate result of the acts, omissions, and conduct of the

16  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, decedents' exposure

17  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

18  or harm to the decedents as set forth in **Exhibit A**, attached to plaintiffs' complaint and

19  incorporated by reference herein.

20      18.      Plaintiffs are  informed and believes, and thereon alleges, that progressive lung

21  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos

22  fibers

23  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

24  asbestos and asbestos-containing products over a period of time.

25      19.      Decedents suffered from a condition related to exposure to asbestos and asbestos-

26  containing products.  Decedents were not aware at the time of exposure that asbestos or asbestos-

27  containing products presented any risk of injury and/or disease.

28      20.      As a direct and proximate result of the aforesaid conduct of the defendants, their

1  "alternate entities," and each of them, decedents incurred liability for physicians, surgeons,

2  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

3  amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this

4  complaint accordingly when the true and exact cost thereof is ascertained.

5         21.    As a direct and proximate result of the aforesaid conduct of the defendants, their

6  ALTERNATE ENTITIES, and each of them, decedents incurred liability for the reasonable

7  value of medial care provided by decedents' family members measured by, inter alia, the costs

8  associated with the hiring a registered nurse, home hospice, or other service provider, the true

9  and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to

10 amend this complaint accordingly when the true and exact costs are known or at time of trial.

11        22.    As a direct and proximate result of the aforesaid conduct of defendants, their

12 ALTERNATE ENTITIES, and each of them, decedents suffered permanent injuries to his

13 person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer

14 and related sequelae, and the mental and emotional distress attendant thereto, and ultimately

15 death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be

16 proven at trial.

17        23.    As a further direct and proximate result of the said conduct of the defendants,

18 their ALTERNATE ENTITIES, and each of them, decedents incurred loss of income, benefits,

19 entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

20 pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is

21 requested to amend this complaint to conform to proof at the time of trial.

22        24.    As a further direct and proximate result of the said conduct of the defendants,

23 their ALTERNATE ENTITIES, and each of them, decedents' exposure to asbestos and asbestos-

24 containing products caused severe and permanent injury to decedents, and ultimately decedents

25 died on the dates previously stated herein.

26        25.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

27 directors and managing agents participated in, authorized, expressly and impliedly ratified, and

28 had full knowledge of, or should have known of, each of the acts set forth herein.

26.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

27.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons", including decedents herein, giving rise to decedents' claim herein alleged for punitive damages against said defendants.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

(Products Liability - Survival)

PLAINTIFF SHIRLEY CRONIN, AS SUCCESSOR-IN-INTEREST TO THE DECEDENT RAYMOND C.  CRONIN, SR. COMPLAINS OF DEFENDANTS VIAD CORP., THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; ESTELA CARCALLAS , AS SUCCESSOR-IN-INTEREST TO THE DECEDENT FABIAN CARCALLAS COMPLAINS OF DEFENDANTS TODD SHIPYARDS CORPORATION, GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; PEGGY HOTT, AS SUCCESSOR-IN-INTEREST TO THE DECEDENT VIRGIL HOTT COMPLAINS OF DEFENDANTS COMPLAINS OF DEFENDANTS  TODD SHIPYARDS CORPORATION,  THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

28.    Plaintiffs incorporates herein by reference, as though fully set forth herein, each paragraph of the First Cause of Action  herein.

29.    Defendants, their "alternate entities", and each of them, knew and intended that

1  the above-referenced asbestos and asbestos-containing products would be used by the purchaser

2  or user without inspection for defects therein or in any of their component parts and without

3  knowledge of the hazards involved in such use.

4       30.   Said asbestos and asbestos-containing products were defective and unsafe for

5  their intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

6  and/or death.  The defect existed in the said products at the time they left the possession of

7  defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

8  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

9  persons", including decedents herein, while being used in a reasonably foreseeable manner,

10  thereby rendering the same defective, unsafe, and dangerous for use.

11       31.   "Exposed persons" did not know of the substantial danger of using said products.

12  Said dangers were not readily recognizable by "exposed persons".  Said defendants, their

13  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

14  which decedents and others similarly situated were exposed.

15       32.   In researching, manufacturing, fabricating, designing, modifying, testing or

16  failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying,

17  offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying,

18  facilitating, promoting, representing, endorsing servicing, installing, contracting for installation,

19  repairing, marketing, warranting, rebranding, manufacturing for others, packaging and

20  advertising asbestos and asbestos-containing products, defendants, their ALTERNATE

21  ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed

22  persons" who came in contact with said asbestos and asbestos-containing products, in that said

23  defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there

24  was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-

25  containing products, including, but not limited to, asbestosis, other lung damages, and cancer.

26  Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or

27  with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and

28  which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of

1    them on or before 1930, and thereafter.

2    ////

3    ////

4         33.    On or before 1930, and thereafter, said defendants, their ALTERNATE

5    ENTITIES and each of them, were aware that members of the general public and other "exposed

6    persons", who would come in contact with their asbestos and asbestos-containing products, had

7    no knowledge or information indicating that asbestos or asbestos-containing products could

8    cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

9    members of the general public and other "exposed persons", who came in contact with asbestos

10   and asbestos-containing products, would assume, and in fact did assume, that exposure to

11   asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

12   hazardous to health and human life.

13        34.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

14   of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

15   lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

16   market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

17   asbestos-containing products without attempting to protect "exposed persons" from, or warn

18   "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

19   asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or

20   warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos

21   and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

22   intentionally failed to reveal their knowledge of said risk, and consciously and actively

23   concealed and suppressed said knowledge from "exposed persons" and members of the general

24   public, thus impliedly representing to "exposed persons" and members of the general public that

25   asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.

26   Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and

27   made these implied representations with the knowledge of the falsity of said implied

28   representations.

35.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products.  In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including decedents.

36.    Plaintiffs alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use, but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

37.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, decedents suffered permanent injury and death as alleged herein.

38.    As a direct and proximate result of the actions and conduct outlined herein, decedents have suffered the injuries and damages herein alleged.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

<u>THIRD CAUSE OF ACTION</u>
(Negligence - Wrongful Death)

PLAINTIFF SHIRLEY CRONIN, INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND

AS SUCCESSOR-IN-INTEREST TO RAYMOND C. CRONIN, SR., DECEASED AND

PLAINTIFFS RAYMOND C. CRONIN, JR., ROBERT CRONIN, AS LEGAL HEIRS OF

RAYMOND C. CRONIN, SR., DECEASED COMPLAIN OF VIAD CORP., THEIR

"ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF ESTELA CARCALLAS,

INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST

TO FABIAN CARCALLAS, DECEASED AND PLAINTIFFS FABIAN CARCALLAS III,

OLIVER CARCALLAS, AS LEGAL HEIRS OF FABIAN CARCALLAS, DECEASED

COMPLAIN OF TODD SHIPYARDS CORPORATION, GENERAL DYNAMICS

CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF

PEGGY HOTT, INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-

IN-INTEREST TO VIRGIL HOTT, DECEASED, COMPLAIN OF TODD SHIPYARDS

CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A

THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE

(WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

39.     Plaintiffs incorporates by reference each paragraph contained within the First

Cause of Action as though fully set forth herein.

40.     The heirs at law of the decedents and their relationship to the decedents are set

forth above.

41.     The individuals set forth as heirs constitute all of the surviving heirs of the

respective decedents.

42.     As a direct and proximate result of the conduct of the defendants, their

ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

containing products caused decedents to develop diseases from which condition decedents died.

Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

filing the complaint.

43.     At all times prior to his death, decedents were a faithful and dutiful spouse to their

surviving spouse.

44.     As a direct and proximate result of the conduct of defendants, and each of them,

1  and the death of decedents, decedents' heirs have sustained pecuniary loss resulting from the loss

2  of care, society, comfort, attention, services, and support of decedents all to the damage of

3  decedents' heirs.

4  ////

5      45.    As a further direct and proximate result of the conduct of defendants, and each of

6  them, and the death of decedents, decedents' heirs have incurred funeral expenses in an amount

7  currently not ascertained.

8      WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as

9  hereinafter set forth.

10                    FOURTH  CAUSE OF ACTION
                    (Products Liability - Wrongful Death)

11

12  PLAINTIFF SHIRLEY CRONIN, INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND

13  AS SUCCESSOR-IN-INTEREST TO RAYMOND C.  CRONIN, SR., DECEASED AND

14  PLAINTIFFS RAYMOND C. CRONIN, JR., ROBERT CRONIN, AS LEGAL HEIRS OF

15  RAYMOND C.  CRONIN, SR., DECEASED COMPLAIN OF VIAD CORP., THEIR

16  "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF ESTELA CARCALLAS,

17  INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST

18  TO FABIAN CARCALLAS, DECEASED AND PLAINTIFFS FABIAN CARCALLAS III,

19  OLIVER CARCALLAS, AS LEGAL HEIRS OF FABIAN CARCALLAS, DECEASED

20  COMPLAIN OF  TODD SHIPYARDS CORPORATION, GENERAL DYNAMICS

21  CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF

22  PEGGY HOTT, INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-

23  IN-INTEREST TO VIRGIL HOTT, DECEASED, COMPLAIN OF  TODD SHIPYARDS

24  CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A

25  FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

26  LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

27      46.    Plaintiffs incorporates herein by reference, as though fully set forth herein, each

28  paragraph of the First, Second and Third Causes of Action herein.

47.    As a direct and proximate result of the conduct of defendants, and each of them, decedents' heirs have sustained the injuries and damages previously alleged.

WHEREFORE, plaintiffs prays judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

## IV.

## DAMAGES AND PRAYER

WHEREFORE, plaintiffs prays judgment against defendants, their "alternate entities", and each of them in an amount to be proved at trial in each individual case, as follows:

(a)    For plaintiffs' general damages according to proof;

(b)    For plaintiffs' loss of income, wages and earning potential according to proof;

(c)    For plaintiffs' medical and related expenses according to proof;

(d)    For plaintiffs' cost of suit herein;

(e)    For exemplary or punitive damages according to proof;

(f)    For damages for fraud according to proof; and

(g)    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: July 7, 2008                BRAYTON❖PURCELL LLP

/S/ David R. Donadio

By:    _____
David R.  Donadio
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated: July 7, 2008                BRAYTON❖PURCELL LLP

/S/ David R. Donadio

By:    _____
David R.  Donadio
Attorneys for Plaintiffs

EXHIBIT A

Decedent:   RAYMOND C.  CRONIN, SR.,   Deceased.

Decedent's injuries:  Decedent was diagnosed with mesothelioma, asbestosis and asbestos-related pleural disease on or about 2007.  Decedent died on July 20, 2007

Defendants:  Plaintiffs contend that the asbestos-containing products to which Decedent  was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.

Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Gilmore Gas Station Glen & Lakeshore Avenue Oakland, CA | Gilmore Gas Station Glen & Lakeshore Avenue Oakland, CA | Gas Station Attendant | Approx. 1944-1946 |

Job Duties: Decedent pumped gas and performed clean-up duties.  Decedent worked in close proximity to mechanics as they used air hoses to blow out brake drums and performed OEM brake jobs on 1934 to 1940 FORD MOTOR COMPANY automobiles.  Decedent recalled the following supervisor: Clem Perkins (deceased).  Decedent recalled the following co-worker: Adrian Mitchell (mechanic), address currently unknown.  Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Lakeshore Sporting Goods Lakeshore Avenue Oakland, CA | Lakeshore Sporting Goods Oakland, CA | Clerk | Approx. 1948 or 1949 |

Job Duties: Decedent worked as a clerk in a sporting goods store.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| | Location of | | Exposure |
|---|---|---|---|

EXHIBIT "A"

| Employer | Exposure | Job Title | Dates |
|---|---|---|---|
| The Pacific Co. Engineers & Builders, Berkeley, CA | The Pacific Co. Engineers & Builders, Berkeley, CA | Unknown | 1/1949-3/1949 (Approx. 3 months) |

Job Duties: Decedent could not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Don Lee Cadillac 24th and Harrison Streets Oakland, CA | Don Lee Cadillac Oakland, CA | Driver | 1949-1950 |

Job Duties: Decedent assisted customers who brought in their Cadillacs for 1000-mile service checks.  Decedent took charge of the car as service writers wrote up the customer order, then delivered the car to the waiting mechanic in one of 8 to 10 service bays.  Decedent worked daily in close proximity to mechanics and recalled them performing OEM brake and clutch jobs on 1946-1949 GENERAL MOTORS CORPORATION CADILLACS and OLDSMOBILES using GENERAL MOTORS CORPORATION (CADILLAC) parts.  Decedent worked around the mechanics as they arced and sanded brakes, and blew dust out of the brake shoes.  Decedent recalled owner Don Lee, address currently unknown.  Decedent recalled co-worker: Bob Edward (shop foreman), Piedmont, California.  Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Sequoia Motor Co. 4917 E. 14th St. Oakland, CA | Unknown | Unknown | 7/1/1950- 9/30/1950 |

Job Duties: Decedent could not recall the specifics of this employment.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

////

Location of    Exposure

| Employer | Exposure | Job Title | Dates |
| --- | --- | --- | --- |
| Craig Oil Motor Company, Inc.<br>811 W. 7th St.<br>Los Angeles, CA | Unknown | Unknown | 7/1/1950-<br>9/30/1950 |

Job Duties: Decedent could not recall the specifics of this employment.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |
| T. Guy Cornyn<br>P.O. Box 842<br>101 1/2 E. Huntington Dr.<br>Arcadia, CA 91006 | Unknown | Unknown | 10/1/1950-<br>12/31/1950 |

Job Duties: Decedent could not recall the specifics of this employment.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |
| Shepherd Cadillac/Oldsmobile, Oakland, CA | Shepherd Cadillac/Oldsmobile, Oakland, CA | Driver | 1950-1951 |

Job Duties:  Decedent performed the same driver duties for Shepherd, the new owner of the Don Lee Cadillac business, as described above.  Decedent drove cars into the mechanics' bays and recalled dusty conditions as mechanics arced and sanded brakes, and blew dust out of the brake shoes.  Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |
| Perry's Associated Service Station,<br>Oakland, CA | Associated Gas Station, Piedmont, CA | Gas Station Attendant | Approx.<br>10/1950-3/1951 |

Job Duties: Decedent performed general gas station attendant duties.

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |

EXHIBIT "A"

| U.S. Navy | Operations Research Group, SURF Division 12-2 | Engineman | 2/20/1951-1/16/1952 |
| | Naval Training Center, San Diego, CA | | 7/22/1951-8/4/1951 |
| | Operations Research Group, SURF Division 12-3 | | 1/17/1952-1/31/1952 |

Job Duties: Decedent served in the active Navy and with the Navy Reserves from 1951-1955. Decedent underwent engineman training, proceeding through fireman apprentice, fireman, engineman 3rd class and training for engineman 2nd class. Plaintiff is currently unaware if decedent was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Montgomery Ward and Co., Inc.<br>618 W. Chicago Ave.<br>Chicago, IL | Montgomery Ward and Co., Inc., Unknown location | Unknown | Approx. 4/1951-6/1951 |

Job Duties: Decedent could not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Harrison Radiator<br>Lockport, NY 14094 | Harrison Radiator, Unknown location | Unknown | Approx. 7/1951-9/1951 |

Job Duties: Decedent could not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

////

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| General Motors Corp. | General Motors Corp., | Unknown | Approx. |

EXHIBIT "A"

P.O. Box 300                    Unknown location                    10/1951-12/1951
Detroit, MI 48265

Job Duties: Decedent could not recall the specifics of this employment. Plaintiff is currently
unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| H.W. Shepherd Inc. Cadillac/Oldsmobile, 1300 El Camino Real, Menlo Park, CA 94025 | Shepherd Cadillac/Oldsmobile, Oakland, CA | Appraiser | Approx. 10/1951-3/1952; 1/1954-9/1956 |

Job Duties: Decedent worked as a used car appraiser. Decedent worked in close proximity to
mechanics while they removed and installed brakes on OLDSMOBILES and CADILLACS
(GENERAL MOTORS CORPORATION).  Decedent recalled the mechanics used compressed
air to clean the brake assemblies.  Decedent recalled there were 15 service bays and 6-7
mechanics working on site.  Decedent recalled the dealership used OEM brakes and clutches.
Decedent worked in close proximity to mechanics as they arced and sanded brakes, and blew
dust out of the brake shoes. Decedent recalled owner: Al Shepherd, address currently unknown.
Decedent recalled supervisor: Paul Spellman (used car manager), address currently unknown.
Decedent recalled the following co-worker: Zip Nielsen (deceased). Plaintiff currently contends
that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center, San Diego, CA | Engineman | 3/17/1952-5/14/1952 |

Job Duties:   Decedent was on active duty awaiting his ship assignment.  Plaintiff is currently
unaware if decedent was exposed to asbestos during this service.


////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | PICKAWAY (APA-222); | Engineman (3rd | 5/15/1952- |

| | | |
|---|---|---|
| Hunters Point Naval Shipyard, San Francisco, CA; Naval Repair Facility, Yokosuka, Japan; Naval Repair Facility, Sasebo, Japan; Naval Repair Facility, Okinawa, Japan; Naval Repair Facility, Hong Kong; Korea | Class) | 1/4/1954 |

Job Duties: Decedent served on board the <u>PICKAWAY</u> (APA 222), as a 3rd Class Engineman and worked with the "A" Division. Decedent stood watch on GRISCOM-RUSSELL (VIAD CORP.) evaporators. Decedent repaired pipe insulation, maintained pumps & valves,  worked with packing and gaskets, and worked around others working with gaskets.  Decedent operated GENERAL MOTORS CORPORATION 6-71 diesel engines on INTERNATIONAL HARVESTER (INTERNATIONAL TRUCK & ENGINE CORPORATION) and DODGE (DAIMLERCHRYSLER CORPORATION) landing craft. Decedent worked on BUDA (ALLIS-CHALMERS CORPORATION PRODUCT LIABILITY TRUST) marine engines. Decedent would cold shock boiler and evaporator fire tubes. Decedent did not recall the names of the manufacturers of the insulation, gaskets, packing, boilers, or asbestos cloth used to wrap steam lines.  Decedent recalled significant repairs being performed, including welding work, when the <u>PICKAWAY</u> drydocked at Hunters Point Naval Shipyard, San Francisco, California.  Decedent also recalled repair work performed when the <u>PICKAWAY</u> (APA 222) was at the Naval Repair Facility, Yokosuka, Japan.  Decedent recalled the following supervisor: Leroy Whitley (First-Class Engine Man), address currently unknown.  Decedent recalled the following co-worker: Jim Lawrence (deceased). Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Receiving Station, San Francisco, CA | Engineman (3rd Class) | 1/5/1954- 1/14/1954 |
| | Naval Station, San Diego, CA | | 1/13/1954 |
| | Naval Receiving, SURF Division 12-4 | | 3/23/1954- 7/1/1954 |

Job Duties: Decedent taught a class on diesel engines to reserve officers.  Plaintiff is currently unaware if decedent was exposed to asbestos during this service.

| | Location of | | Exposure |
|---|---|---|---|

K:\Injured\109948\FEDA (WD)(FED26).wpd

EXHIBIT "A"

| Employer | Exposure | Job Title | Dates |
|---|---|---|---|
| Robert W. Dodds<br>1375 Grand Ave.<br>Piedmont, CA 94611 | Unknown | Unknown | Approx.<br>1/1955-3/1955 |

Job Duties: Decedent could not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Art Bridges Imports Oakland, Inc., Oakland, CA | Art Bridges Used Cars, Oakland, CA | Car Salesman | 7/1/1956-9/30/1958;<br>1/1/1959-3/31/1959 |

Job Duties: Decedent worked as a used car salesman.  Decedent sold various cars, including RENAULTS (RENAULT S.A.), PEUGEOTS (PEUGEOT MOTORS OF AMERICA, INC.) and PONTIACS (GENERAL MOTORS CORPORATION).  Decedent worked in close proximity to mechanics who performed brake and clutch work, and used compressed air to clean the brake assemblies.  Decedent worked in close proximity to mechanics as they arced and sanded brakes, and blew dust out of the brake shoes. Decedent recalled the mechanics used OEM brakes and clutches. Decedent recalled there was a service shop on site with one bay. Decedent recalled the following supervisor: Art Bridges (deceased).  Decedent recalled the following co-worker: Jerry McChesney (deceased).  Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| S & B Motors,<br>A.L. Bruner, Inc.<br>19625 E 14th Street<br>Hayward, CA | S & B Motors<br>Hayward, CA | Manager | Approx.<br>1/1957-3/1957;<br>7/1960-3/1961;<br>10/1963-9/1964 |

Job Duties: Decedent performed various managerial duties.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Used Car Emporium South<br>19895 Mission Blvd. | Unknown | Unknown | 4/1/1959-9/30/1959; |

EXHIBIT "A"

Hayward, CA 94541                                                    1/1/1960-
                                                                     6/30/1960;
                                                                     7/1/1964-
                                                                     6/30/1965

Job Duties: Decedent could not recall the specifics of this employment.  Plaintiff is currently
unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| S&B Motors, Inc. 19895 Mission Blvd. P.O. Box 419 Hayward, CA 94543 | Unknown | Unknown | 7/1/1960-3/31/1961; 10/1/1963-3/1/1964 |

Job Duties: Decedent could not recall the specifics of this employment.  Plaintiff is currently
unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Art Bridges Incorporated 1132 Harrison St. Oakland, CA 94607 | Unknown | Unknown | 7/1/1960-9/30/1960 |

Job Duties: Decedent could not recall the specifics of this employment.  Plaintiff is currently
unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Ray Johnson Volkswagen, Oakland, CA | Ray Johnson Volkswagen, Oakland, CA | Car Salesman | 1961-1962 |

Job Duties: Decedent worked as a car salesman and manager.  Decedent worked in close
proximity to mechanics who performed brake and clutch work, and used compressed air to clean
brakes. Decedent recalled the mechanics used VOLKSWAGEN (VOLKSWAGEN OF
AMERICA, INC.) brakes and clutches. Decedent recalled there was a service shop on site.
Decedent recalled the following supervisor: Ernie Block, address currently unknown.  Decedent
recalled the following co-worker: Don Hoover (deceased). Plaintiff currently contends that
decedent was exposed to asbestos during this employment.

|  | Location of |  | Exposure |

EXHIBIT "A"

| Employer | Exposure | Job Title | Dates |
|----------|----------|-----------|-------|
| Ray Ely Motors, Inc.<br>19100 Mission Blvd.<br>Hayward, CA 94541 | Ray Ely Motors, Inc.<br>Hayward, CA | Car Salesman | Approx.<br>1/1961-6/1961 |

Job Duties: Decedent sold cars. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| B & B Motor Company<br>17944 Mission Blvd.<br>Hayward, CA 94541 | B & B Motor Company,<br>Hayward, CA | Car Salesman | Approx.<br>7/1961-6/1962;<br>1/1963-6/1963 |

Job Duties: Decedent sold used cars. Decedent recalled that the garage hired ABC BRAKE, Oakland, California, a mobile unit that would set up shop by the garage and arc the shoes. Decedent worked in close proximity to ABC BRAKE employees daily. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| Bank of America<br>1 S. Van Ness<br>San Francisco, CA 94102 | Bank of America,<br>San Francisco, CA | Unknown | Approx.<br>7/1963-6/1964 |

Job Duties: Decedent could not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| Hayward Motor Sales<br>25501 Mission Blvd.<br>Hayward, CA 94541 | Hayward Ford,<br>Hayward, CA | Sales Manager | Approx.<br>10/1965-9/1970 |

Job Duties: Decedent sold used cars.  Decedent worked in close proximity to mechanics who performed brake and clutch work, and used compressed air to clean brakes. Decedent recalled the mechanics used FORD MOTOR COMPANY brakes and clutches. Decedent recalled there was a service shop on site.  Decedent recalled that the garage hired ABC BRAKE, Oakland, California, a mobile unit that would set up shop by the garage and arc the shoes.  Decedent worked in close proximity to ABC BRAKE employees daily.  Decedent recalled the following co-workers: Ray Strasser (mechanic), Hayward, California; Jerry McChesney (deceased); and James Claude "Pete" Player (deceased).   Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Jerry McChesney Select Automobiles, 16600 E. 15th St., San Leandro, CA | Jerry McChesney Used Cars, San Leandro, CA | Car Salesman | Approx. 1/1971-6/1971 |

Job Duties: Decedent sold used cars.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Fidelity Motors, Inc., Richmond, CA | Fidelity Oldsmobile Berkeley, CA | Salesman | Approx. 10/1971-12/1971 |

Job Duties: Decedent recalled setting up a Jeep franchise at this shop.  Decedent worked daily in close proximity to mechanics as they performed brake and other mechanical work.  Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Mazda of Hayward, 900 Santa Monica Blvd. Santa Monica, CA | Mazda of Hayward, Hayward, CA | Sales Manager | Approx. 10/1971-12/1971 |

Job Duties: Decedent worked as a manager.  Decedent worked in close proximity to mechanics who performed brake and clutch work, and used compressed air to clean brakes. Decedent recalled the mechanics used OEM parts manufactured by MAZDA (MAZDA NORTH AMERICAN OPERATION).  Decedent recalled there was a service shop on site. Decedent recalled the following supervisor: Bill Serentopolis, Sacramento, California.  Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Humphrey Motors Inc., Hayward, CA | Humphrey Motors VW Hayward, CA | Sales Manager | Approx. 1/1974-1979 |

Job Duties: Decedent worked as a used car sales manager.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Jim Moran Oldsmobile Inc. Fremont, CA | Jim Moran Oldsmobile Inc. Fremont, CA | Sales Manager | Approx. 1/1972-10/1972; 1/1973-12/1973 |

Job Duties: Decedent worked as a used car sales manager.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| East Bay AMC Jeep, Inc. San Leandro, CA | East Bay AMC Jeep, Inc. San Leandro, CA | Salesman | 1/1980-4/1980 |

Job Duties: Decedent worked as a salesman.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Self-employment | Cronin Motors, Hayward, CA | Owner/Manager | 1980-1990 |

Job Duties: Decedent owned a used car business that had a small service garage where mechanics performed minor brake and safety check work. Decedent purchased aftermarket parts at KRAGEN (CSK AUTO, INC.), Hayward, California.  Decedent purchased RAYBESTOS (RAYMARK INDUSTRIES, INC.) brakes.  Decedent also recalled BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes. Decedent worked in close proximity to mechanics who performed brake and clutch work, and used compressed air to clean brakes.  Decedent recalled the following co-worker:  Jack Rogers (mechanic), Hayward, California.  Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| | Location of | | Exposure |
|---|---|---|---|

| Employer | Exposure | Job Title | Dates |
|----------|----------|-----------|-------|
| Harveys Casino Resorts, Stateline, NV | Harveys Casino Resorts, Stateline, NV | Driver | 1992-1995 |

Duties: Decedent worked part-time as a limousine driver. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.


Decedent:  FABIAN CARCALLAS, Deceased.


Decedent's injuries:  Decedent was diagnosed with asbestos-related pleural disease on or about 1995, asbestosis in or about 1997, lung cancer on or about 2006.  Decedent died on December 25, 2007.


Defendants:  Plaintiffs contend that the asbestos-containing products to which Decedent  was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.


Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| General Textile, Inc., Murphy Q.C., Philippines | General Textile, Inc., Murphy Q.C., Philippines | Electrician | 8/1966-6/1969 |

Job Duties: Decedent installed the electrical components of textile machines, power substation transformers, switch gears, power capacitor banks, lighting panels, and fixtures.  Decedent rewound BURNS electric motors in addition to maintaining and trouble-shooting textile machineries and boilers.  Decedent removed insulation from exterior steam lines and relocated a boiler.  Plaintiff cut gaskets from AW CHESTERTON sheet gasket material.  Decedent installed ROCKWELL INTERNATIONAL (ALLEN BRADLEY) switchboards.  Decedent removed door gaskets, brick, and mortar from a boiler.  Decedent applied refractory mortar to the inside of a boiler and installed refractory brick.  Decedent installed, repaired and disturbed insulation, gaskets or packing in  CROUSE-HINDS (COOPER INDUSTRIES, INC.) switch gear, motor starters, circuit breakers, pumps, motors, and cable.  Decedent applied FLINTKOTE asbestos insulation cement to pipelines and worked with asbestos cement pipe.  Decedent cut gaskets from GARLOCK sheet gasket material.  Decedent cut and drilled bakelite mounting board.

Decedent installed and repaired GENERAL ELECTRIC and WESTINGHOUSE switches and transformers. Decedent removed and replaced packing and removed and repaired pumps manufactured by GENERAL ELECTRIC, WESTINGHOUSE, and INGERSOLL-RAND. Decedent replaced pump gaskets and removed and replaced packing on packing glands. Decedent cut through ceiling tiles to install electrical conduit in ceilings. Decedent personally worked on and was in close proximity to others working on CUTLER HAMMER switch gears, starters. motors, and insulation materials, and ROCKWELL AUTOMATION (ALLEN BRADLEY) motor starters, switch gear and controllers. Decedent installed new and maintained old SQUARE D switches, which contained asbestos insulated arc chutes that decedent had to scrape, magnetic starters and switchboards, and drilled bakelite panel boards manufactured by SQUARE D to mount this equipment. Decedent wore asbestos gloves and blankets provided by his employer while welding. Decedent removed and replaced gaskets in the transformers. Decedent removed and repaired ALLIS CHALMERS generators, pumps. Decedent worked in close proximity to insulators who wrapped pipelines with asbestos insulation. Decedent worked on, and in close proximity to electricians who worked with, GRAYBAR supplied asbestos-insulated cable switchboards, cutting asbestos insulated cable and disturbing asbestos gaskets, power cable, industrial cable, and asbestos sheet material and cable manufactured by WESTERN BUILDING MATERIALS. Decedent recalled supervisor: Mr. Gubantes, Quezon City, Philippines. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Feati Industries, Inc., Metro Manila, Philippines | Feati Industries, Inc., Metro Manila, Philippines | Production Engineer | 1969-1971 |

Job Duties: Decedent supervised the maintenance of plant equipment. Decedent mixed and applied BIGLOW refractory material to autoclave equipment. Decedent supervised others who assembled and manufactured electric motors, air conditioning units, refrigerators, floor polishers, and pumps. Decedent cut and installed insulated electrical wire. Decedent worked on and in close proximity to others working on and disturbing CUTLER HAMMER starters, circuit breakers, motors, conduit, junction boxes, and enclosures. Decedent and others worked in close proximity to workers who removed insulation materials from equipment. Decedent removed and repaired ALLIS CHALMERS generators. Decedent was in close proximity to workers working on CUTLER HAMMER switch gears, motors, and insulation materials and ROCKWELL AUTOMATION (ALLEN BRADLEY) electrical equipment. Decedent worked in close proximity to workers who worked on WESTERN BUILDING MATERIALS supplied cables and switchboards, including stripping wire and scraping the boards. Decedent worked in close proximity to others working with ALLIS CHALMERS equipment and removing insulation felt from air conditioning units and refrigeration systems. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Location of | | Exposure |
|---|---|---|

| Employer | Exposure | Job Title | Dates |
|----------|----------|-----------|-------|
| Nationwide Engineering, Inc., Metro Manila, Philippines | Nationwide Engineering, Inc., Metro Manila, Philippines | General Manager | 1971-1978 |

Job Duties: Decedent managed this engineering company. Decedent performed site inspections of construction sites. Decedent personally worked on and worked in close proximity to workers who worked on CUTLER-HAMMER switch gears, motors, and electrical insulation materials. Decedent worked in close proximity to insulators who applied insulation materials to pipelines. Decedent worked in close proximity to workers who worked on WESTERN BUILDING MATERIALS cables and switchboards. Decedent worked in close proximity to others who worked with and disturbed ALLIS CHALMERS pumps, heaters. Decedent worked in close proximity to others who installed and distrubed ROCKWELL AUTOMATION (ALLEN BRADLEY) switchboards, electrical panels, Bakelite terminal boards and motor controllers containing arc chutes. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| G&G Industries (Juanita S. Gloeckner) 609 Carolina Street Vallejo, CA | G&G Industries (Juanita S. Gloeckner) 609 Carolina Street Vallejo, CA | Salesman | 1978 |

Job Duties: Decedent sold vacuum cleaners. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| Safeway Coffee Co. Mariposa St. San Francisco, CA | Safeway Coffee Co. Mariposa St. San Francisco, CA | Engineer | 1978 (approximately 15 days) |

Job Duties: Decedent inspected grinding machinery and advised maintenance staff on how to repair it. Decedent worked in close proximity to workers who replaced gaskets and insulated

wiring.  Decedent performed welding.  Decedent wore asbestos gloves while welding.  Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Mare Island Naval Shipyard Vallejo, CA | Electrical Engineer | 1978-1995 |
| | Plant Design Building | | |
| | Nuclear Engineering Building | | |
| | Public Works | | |
| | Machinery Building | | |
| | Boiler Shop | | |
| | Metal Plating Shop | | |
| | Foundry | | |
| | Welding Shop | | |
| | Electrical Shop | | |
| | Various vessels, including but not limited to: | | |
| | ABRAHAM LINCOLN (CVN-72) | | 1980; 1990-1994 |
| | ALEXANDER HAMILTON (SSBN-617) | | |
| | ARKANSAS (CGN-41) | | |
| | BATFISH (SSN-681) | | |

BATON ROUGE
(SSN-689)

BENJAMIN FRANKLIN
(SSBN-640)

CINCINNATI (SSN-693)

DOLPHIN (AGSS-555)

DRUM (SSN-677)

HAMMERHEAD
(SSN-663)

JAMES MADISON
(SSBN-627)

KAMEHAMEHA
(SSBN-642)

LA JOLLA (SSN-701)                    1987; 1995
                                      (6-9 months)

LANG (FF-1060)                        1983-1991
                                      (3-5 months)

LOS ANGELES
(SSN-688)

MARIANO G. VALLEJO                    1985-1990
(SSBN-658)                            (3 occasions)

NAUTILUS (SSN-571)

PARCHE (SSN-683)

PERMIT (SSN-594)

PINTADO (SSN-672)

EXHIBIT "A"

PLUNGER (SSN-595)

SCORPION (SSBN-598)

SEA WOLF (SSN-575)                                    Late 1980s

SNOOK (SSN-592)

TAUTOG (SSN-639)                                      Late 1980s

TECUMSEH (SSBN-628)

THEODORE
ROOSEVELT (SSBN-600)

THOMAS EDISON
(SSBN-610)

Mothball Fleet,
eight unknown ships

Docks 1, 2, 3, 4

Underground pipe tunnels

Job Duties: In the shipyard shops, decedent inspected electrical systems and worked near
asbestos cement conduit.  Decedent worked in close proximity to shipyard workers who removed
and replaced pipe insulation and floor tile in the shops.  Decedent designed electrical controls for
nuclear submarines, electrical power distribution systems, refueling communication systems,
emergency support systems, super shore power systems, dry dock systems, and hotel shore
power systems.  Decedent worked aboard ships and submarines and in the shop inspecting
nuclear components.  Decedent worked in close proximity to others who worked on or disturbed
CUTLER-HAMMER supply starters, circuit breakers, push buttons, junction boxes, conduit,
enclosures, switchgear, motors, and insulation materials.  While working on nuclear submarines,
decedent worked in the engine compartment, the auxiliary compartment, and the upper and lower
levels of the reactor compartment.  Decedent inspected and instructed staff on how to repair
electrical controls on generators, motors, and pumps.  Decedent was in proximity to others who
removed, cut, and replaced asbestos ceiling tiles to access electrical wiring.  Decedent was in
close proximity to others who installed and repaired CUTLER HAMMER starters, circuit
breakers, motors, switchgear, push buttons, junction boxes, conduit, and enclosures, GENERAL
ELECTRIC electrical switch gear and electrical components, GRAYBAR supplied control
panels, bakelite board, switchboards, control panels, asbestos packing glands, motor starters,
cable, asbestos insulation sheets, asbestos gaskets, breaker panels, pumps, sump pumps, electric

motors, gasketing sheets, circuit breakers, refractory materials, switch gears, junction boxes, electrical panels and controls and WESTINGHOUSE electric motors, pump motors, valves, steam generators, steam strainers, reduction gears, and control boards.  Decedent worked in close proximity to workers who repaired and installed INGERSOLL-RAND pumps, compressors, and generators, and disturbed insulation materials, gasket or packing in them.  Decedent was in close proximity to others who disturbed insulation materials, gaskets and packing in, and installed and repaired motor starters manufactured by CROUSE-HINDS, WESTERN CABLE CO., WESTINGHOUSE, GENERAL ELECTRIC and EATON ELECTRIC.  Decedent was in proximity to others who cut phenolic resin material in electrical equipment.  Decedent worked in close proximity to shipyard workers who removed asbestos insulation materials from pipelines aboard ships and in the shops. Decedent worked in close proximity to workers who inspected and installed bakelite, pumps and motors manufactured by EATON ELECTRICAL and WESTINGHOUSE, as well as motor controllers, switchboards and switch gear controllers manufactured by ROCKWELL AUTOMATION (ALLEN-BRADLEY).  Decedent was in proximity to others who cut and installed insulated  communication and power cables manufactured by GENERAL CABLE, WESTINGHOUSE and ROMEX.  Decedent worked in close proximity to workers inspecting, installing and servicing high temperature pumps, arc shields, pumps, switch gears, switch boards, and generators manufactured by ALLIS-CHALMERS.  Decedent worked in close proximity to others who repaired SQUARE D motor starters, junction boxes, and main breakers and installed junction boxes on Bakelite board that had to be drilled and cut.  Decedent worked in close proximity to employees of BABCOCK & WILCOX who repaired boilers on the ships.  Decedent worked in close proximity to shipyard workers who removed and installed WESTERN BUILDING MATERIALS supplied floor tile asbestos sheet, cables, panels, circuit breakers, motor starters, conduit pipes, pumps, and junction boxes aboard the ships and in the shops.  Decedent worked in close proximity to laggers who applied insulation to pipelines, and pipefitters who installed gaskets.  Decedent worked in close proximity to machinists who installed electric motors manufactured by WESTINGHOUSE and EATON ELECTRICAL.  Decedent worked in close proximity to others working with and disturbing insulation material in wiring, cable, switch gears, panels, bakelite, asbestos insulating sheets, motor starters, junction boxes, pumps, valves, circuit breakers, and enclosures for electrical components from EATON ELECTRICAL.   In the welding shop, decedent worked in close proximity to fire proofers who sprayed fireproofing onto walls and pipelines. Decedent recalled recommending for purchase IMO asbestos gasket-containing fluid pumps, booster pumps, circulating pumps, and hydraulic pumps, Bakelite, and asbestos insulating sheets and being in close proximity to them while they were being repaired and installed.  Decedent recalled ordering out of a THOMAS DEE equipment catalogue in his office.  Decedent worked in close proximity to workers installing and repairing WESTERN BUILDING MATERIALS cables, switchboards, motors, circuit breakers, asbestos sheet, wire,  junction boxes, pumps, conduit, and underground asbestos cement pipes.  Decedent worked in close proximity to others cutting bakelite board manufactured or supplied by WESTERN BUILDING MATERIALS, GRAYBAR, and SQUARE D.   Decedent performed environmental inspections in eight ships in the Mothball Fleet.  In the underground pipe tunnels, decedent worked in close proximity to shipyard workers who removed and replaced insulation on underground steam lines.  Decedent recalled the following supervisors: Dyle Acker (Livermore, California), Ken Hanks (deceased),

Lou Murphy (Vacaville, California), and J. Teopopo (address presently unavailable). Decedent recalled the following coworkers: Michael de LaVega (San Diego, California), and Joe Peterro and Keith Brosser, addresses presently unavailable. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Naval Air Station, Alameda, CA | Electrical Engineer | Early 1980s |
| | ENTERPRISE (CVN-65) | | |
| | CARL VINSON (CVN-70) | | |

Job Duties: On the ENTERPRISE, decedent inspected electrical controls. On the CARL VINSON, decedent worked in the reactor compartment and the steam generator room. Decedent worked in close proximity to shipyard workers who removed insulation from steam generator pipelines. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Naval Air Station, North Island, San Diego, CA | Electrical Engineer | 1978 (2 days) |
| | TAUTOG (SSN-639) | | 1980-1985 (2-3 days) |

Job Duties: Decedent performed equipment inspections on this ship inside the reactor room. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Skaggs Island Naval Facility, Vallejo, CA | Electrical Engineer | 1980s |

Job Duties: Decedent performed inspections of electrical systems in buildings. Decedent worked with insulated wire. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Hunters Point Naval Shipyard, San Francisco, CA ENTERPRISE (CVN-65) | Electrical Engineer | 1985-1988 |

Job Duties: Decedent inspected and prepared the facilities before the ENTERPRISE came into the yard for overhaul. When the ENTERPRISE came into the yard, decedent worked on the main deck and also in the six reactor compartments. Decedent performed steam generator cleaning. Decedent worked in close proximity to insulators who removed and replaced pipe insulation. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Ganzon Realty, Vallejo, CA | Ganzon Realty, Vallejo, CA | Realtor | 1988-1991 |

Job Duties: Decedent worked for a real estate company. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|

| U.S. Coast Guard Training Center, | U.S. Coast Guard Training Center, | Electrical Engineer | 1995-2001 |
| Petaluma, CA/ | Petaluma (Two Rock), CA | | |
| Federal Aviation Administration, Dept. of Transportation | | | |
| Oklahoma City, OK | | | |

Job Duties: Decedent inspected and maintained the training center's electrical, HVAC, boiler, and mechanical systems.  Decedent inspected generators, transformers, and air conditioning systems.  Decedent worked in close proximity to workers who removed insulations from steam lines and boilers. Decedent worked in close proximity to workers who repaired boilers. Decedent cut and stripped insulated wiring.  Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.


////


////


////


Decedent: VIRGIL HOTT, Deceased


Decedent's injuries:  Decedent was diagnosed with lung cancer on or about July 2007, asbestosis and asbestos-related pleural disease on or about December 2007.  Decedent died on December 25, 2007.


Defendants:  Plaintiffs contend that the asbestos-containing products to which Decedent  was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.


Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center Great Lakes, IL | Seaman (Trainee) | 02/1958-05/1958 |

Job Duties:  Decedent completed basic training. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Class A Torpedo School Newport, RI | Trainee (TMSA) | 05/1958-08/1958 |

Job Duties:  Decedent attended Torpedo School training in a classroom. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Air Station North Island San Diego, CA | Ordnance Technician | 09/1958-09/1959 |

Job Duties:  Decedent worked in the Ordnance Division. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | JAMES E. KYES (DD 787) | Torpedoman | 10/1959-11/1960 |

Long Beach

Naval Shipyard

Long Beach, CA

Naval Repair Facility

Yokosuka, Japan

Naval Repair Facility

Kao Sheng, Formosa

(nka Taiwan)

Naval Repair Facility

Hong Kong, China

Job Duties:  Decedent was stationed aboard this destroyer during the Formosa Patrol, which was a circuit from Yokosuka, Japan, to Kao Sheng, Formosa, to Hong Kong, China, and back to Japan. Decedent worked in the torpedo shop and maintained the torpedo tubes, depth charge racks, and compressors on the 01 and 02 decks. The compressors were used to fill the torpedo air flask with 3,000 psi pressure and were frequently serviced to make sure that the torpedoes would fire properly.

Decedent was stationed aboard this ship for an extensive overhaul in Long Beach Naval Shipyard. Decedent recalled that during this overhaul, the steam pipe insulation was replaced throughout the ship. Decedent's berth was on the 3rd deck down in the ship. Decedent recalled that whenever the guns were fired, the vibration caused white insulation dust from the overhead steam pipes to fall onto his top bunk like snow. Decedent brushed the insulation dust off his bunk every night before he went to bed.

Decedent worked in close proximity to the civilian employees of the shipyard, known as 'yardbirds,' who installed the insulation on the ship, welders, and shipfitters. Decedent traveled the same passageways and ship exits as the workers who removed and installed the steam pipe insulation. Decedent frequently went to the boiler and engine rooms during the overhaul to see what was going on. Decedent was present when the boiler was open and being overhauled. Decedent worked in close proximity to mechanics who opened and repaired the relief valves and gaskets in the compressors.

Decedent recalled the following co-workers: Wade Lane, Maryville, Tennessee; Lt. Curley, address currently unknown; and Lt. Peterson, address currently unknown. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|

EXHIBIT "A"

| U.S. Navy | Naval Submarine Base | Torpedoman | 12/1960-02/1961 |
| | New London | (Student) | |
| | Groton, CT | | |

Job Duties:  Decedent attended Torpedo School in a classroom. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |
| U.S. Navy | FURSE (DDR 882) | Torpedoman | 03/1961-07/1961 |
| | Charleston Naval Shipyard | (Supervisor) | |
| | Charleston, SC | | |
| | Philadelphia Harbor | | 07/04/1961 |
| | Philadelphia, PA | | |
| | New York Harbor | | |
| | New York, NY | | |

Job Duties:  Decedent supervised the other torpedomen in the torpedo shop on this destroyer. Decedent maintained the torpedo tubes, depth charge racks, and compressors. The compressors were used to fill the torpedo air flask with 3,000 psi pressure and were frequently serviced to make sure that the torpedoes would fire properly. Decedent observed that white insulation dust from the overhead steam pipes always fell onto his top bunk. Decedent brushed the insulation dust off his bunk every night before he went to bed.

Decedent worked in close proximity to exposed insulated pipes in his berth and throughout the ship. Decedent worked in close proximity to mechanics who opened and repaired the relief valves and gaskets in the compressors.

Decedent recalled the following co-worker: John "Dusty" Rhoads, Manassas, Virginia. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |
| U.S. Navy | MOALE (DD 693) | Torpedoman | 07/1961-03/1962 |
| | Charleston Naval Shipyard | | |

EXHIBIT "A"

Charleston, SC

Naval Air Station

Guantanamo Bay, Cuba

Naval Air Station

Goat Island, Jamaica

Job Duties:  Decedent worked in the torpedo shop on this destroyer. Decedent recalled that the torpedo racks and depth charge launchers had been removed from this ship.

Decedent was stationed aboard this ship during an extensive overhaul at the Charleston Naval Shipyard. Decedent recalled that the pipe insulation was replaced throughout the ship. Decedent recalled that there were exposed insulated pipes in his berth and throughout the ship. Decedent observed white insulation dust from the overhead piping that fell onto his top bunk. Decedent brushed the insulation dust off his bunk every night before he went to bed.

Decedent worked in close proximity to the civilian employees of the shipyard, known as 'yardbirds,' who installed the insulation on the ship, welders, and shipfitters. Decedent traveled the same passageways and ship exits as the workers who removed and installed the steam pipe insulation. Decedent frequently went to the boiler and engine rooms during the overhaul to see what was going on. Decedent was present when the boiler was open and being overhauled. Decedent worked in close proximity to mechanics who opened and repaired the relief valves and gaskets in the compressors.

Decedent recalled the following co-worker: Walter "Blaze" Raine, St. Petersburg, Florida. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | GRAND CANYON (AD 28) Naval Station Newport, RI | Torpedoman | 03/1962-10/1962; 12/1962 |
| | U.S. Navy Naples, Italy | | |
| | U.S. Navy Barcelona, Spain | | |

Job Duties: Decedent worked in the torpedo shop on this destroyer tender and went on board many destroyers to over haul and repair torpedoes. Decedent maintained the torpedoes, torpedo launchers, and depth charge launchers. INGERSOLL-RAND (INGERSOLL-RAND COMPANY) compressors were used to fill the torpedo air flask with 3,000 psi pressure and were frequently serviced to make sure that the torpedoes would fire properly. Decedent recalled that there were exposed insulated pipes in his berth and throughout the ship.

Decedent worked in close proximity to mechanics who opened and repaired the relief valves and gaskets in the INGERSOLL-RAND (INGERSOLL-RAND COMPANY) compressors.

Decedent did not recall any co-workers. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Air Station Key West, FL | Torpedoman (Student) | 07/1962-11/1962; 1 year |

Job Duties: Decedent attended Underwater Weapon School in a classroom. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | West Loch Naval Weapons Station Hawaii | Torpedoman (1st Class) | 12/1964-1966 |

Job Duties:  Decedent worked with torpedoes. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Station Pearl Harbor, HI | Electrician (Trainee) | 1966-1967 |

Job Duties: Decedent attended Electric School in the Electric Shop. Decedent did not recall any co-workers. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| U.S. Navy | Naval Training Center San Diego, CA | Instructor | 01/1967 |

Job Duties: Decedent taught at the Electric School (for a short period of time). Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| U.S. Navy | Naval Station San Diego, CA | Shore Patrol | 1967 |

Job Duties: Decedent worked as a Naval Police Officer. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| U.S. Navy | SPERRY (AS 12) Naval Station San Diego, CA | Torpedoman | 12/1967 |
| | Todd Shipyard Portland, OR | | |
| | Puget Sound Naval Shipyard Bremerton, WA | | 06/12/1967 |

Job Duties: Decedent was stationed aboard this submarine tender. Decedent was aboard during

an overhaul and repair job at the Puget Sound Naval Shipyard after the ship ran aground onto a freeway. Decedent did not recall any co-workers. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| San Diego Police Academy San Diego, CA | San Diego Police Station San Diego, CA | Officer | 1967-1968 |

Job Duties: Decedent worked as a Police Reserve Officer. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Air Force | Unknown | Unknown | 1968-3/1970 |

Job Duties: Decedent did not recall specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| C.L. Brownlee, et al. Brownlee's BBQ-n-Burger 4605 Pawnee Pthwy Wichita Falls, TX 76310-1416 | Brownlee's BBQ-n-Burger 4605 Pawnee Pthwy Wichita Falls, TX 76310-1416 | Unknown | 7/1969-9/1969 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| | Location of | | Exposure |
|---|---|---|---|

EXHIBIT "A"

| Employer | Exposure | Job Title | Dates |
|----------|----------|-----------|-------|
| Spalding Corporation<br>PO Box 30101<br>Tampa, FL 33630-3101 | Unknown | Unknown | 4/1/1970-<br>9/30/1970 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
|----------|-------------------------|-----------|-------------------|
| Colony Cookware Corp.<br>PO Box 6358<br>Macon, GA 31204 | Unknown | Unknown | 4/1/1970-<br>6/30/1970 |

Job Duties: Decedent did not recall the specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

////

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
|----------|-------------------------|-----------|-------------------|
| US Dept. of Defense | US Air Force<br>Sheppard AFB<br>Wichita Falls, TX | Mechanic<br>(Trainee) | 02/1968-1970 |

Job Duties: Decedent completed jet mechanic school and removed a GE (GENERAL ELECTRIC COMPANY) engine from a F-100 jet. Decedent did not recall any co-workers. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
|----------|-------------------------|-----------|-------------------|

| | | | |
|---|---|---|---|
| Delta Industrial Electric Co. | Delta Industrial | Parts Clerk | 7/1/1970- |
| 2528 Spruill Avenue | Electric Co. | | 3/31/1976 |
| Charleston, SC 29405 | Charleston, SC | | |

Job Duties: Decedent ordered parts, maintained inventory, and performed customer service in the parts office. Decedent worked in close proximity to the repair area of the electric motor shop. Decedent worked in close proximity to mechanics who took apart motors and pumps, rewound motors, and made repairs to motors and pumps.

Decedent worked in close proximity to mechanics who repaired and rebuilt circa 1952-1976 motors including, but not limited to, GE (GENERAL ELECTRIC COMPANY), BALDOR (BALDOR ELECTRIC COMPANY), WESTINGHOUSE (VIACOM, INC.), BLACK AND DECKER (BLACK & DECKER (U.S.) INC.), ROCKWELL (ROCKWELL AUTOMATION, INC.), BODINE MOTORS motors, and LINCOLN (LEESON ELECTRIC CORPORATION) motors for appliances and electric tools. Decedent worked in close proximity to mechanics who used a hack saw to cut MICARTA (VIACOM, INC.) and BAKELITE (UNION CARBIDE CORPORATION) sheet materials. Decedent worked in close proximity to mechanics who removed, cut to size, and replaced phenolic resin wedges in the motors. Decedent worked in close proximity to mechanics who used compressed air to blow the dust and debris out of the motors as they worked on them.

Decedent ordered replacement parts and supplies, including the MICARTA (VIACOM, INC.) and BAKELITE (UNION CARBIDE CORPORATION) sheet materials from BROWNELL ELECTRO INC. (ESSEX GROUP, INC.), Atlanta, Georgia.

Decedent did not recall any co-workers. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Little & Waren, Inc. | Chicks Electric | Manager | 10/1/1976-1983 |
| Chicks Electric Motor Service | Motor Repair | | |
| 648 Via Curvada | San Diego, CA | | |
| Chula Vista , CA 92010 | | | |

Job Duties: Decedent worked as a general manager in close proximity to mechanics who repaired, rewound, and rebuilt circa 1960-1976 motors, controllers, and pumps including, but not limited to GE (GENERAL ELECTRIC COMPANY) 440 volt motors, BALDOR (BALDOR ELECTRIC COMPANY) 440 volt motors, WESTINGHOUSE (WESTINGHOUSE ELECTRIC CORPORATION) 440 volt motors, AO SMITH (A.O. SMITH CORPORATION) 440 volt motors, FRANKLIN (FRANKLIN ELECTRIC CO., INC.) 440 volt motors, RELIANCE

EXHIBIT "A"

(RELIANCE ELECTRIC COMPANY) 440 volt motors, DAYTON (DAYTON ELECTRIC MANUFACTURING CO.; W.W. GRAINGER, INC.) 440 volt motors and pumps, CENTURY (A.O. SMITH CORPORATION) 440 volt motors, STA-RITE (STA-RITE INDUSTRIES, LLC) pumps, HAYWARD (HAYWARD INDUSTRIES, INC.) pumps, GOULDS (GOULDS PUMPS, INC.) pumps, JACUZZI (JACUZZI, INC.) pumps, and CLARK (FORKLIFT LP CORPORATION) 12 volt motors. Decedent worked in close proximity to mechanics who used a hack saw to cut MICARTA (VIACOM, INC.) and BAKELITE (UNION CARBIDE CORPORATION) sheet materials. Decedent worked in close proximity to mechanics who removed and cut to size and replaced phenolic resin wedges in the motors. Decedent worked in close proximity to mechanics who used compressed air to blow the dust and debris out of the motors and pumps.

Decedent recalled that all replacement parts and supplies, including the MICARTA (VIACOM, INC.) and BAKELITE (UNION CARBIDE CORPORATION) sheet materials were ordered from BROWNELL ELECTRO INC. (ESSEX GROUP, INC.), Atlanta, Georgia.

Decedent did not recall any co-workers. Plaintiff currently contends that decedent was exposed to asbestos during this employment.


////


////


////


| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Brownell Electro, Inc. PO Box 550 Congers, NY 10920-0550 | Brownell Electro, Inc. Atlanta, GA | Salesman | 01/1984-12/1985 |

Job Duties: Decedent did not recall specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.


| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Jacksonville Armature & Motor Works, Inc. | Unknown | Unknown | 1985-1986 |

K:\Injured\109948\FEDA (WD)(FED26).wpd

EXHIBIT "A"

PO Box 2759

Sarasota, FL 34230-2759

Job Duties: Decedent did not recall specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Advanced Power Systems Marine Industrial Equipment Corp. 5342 Oak Bay Drive E. Jacksonville, FL 32277-1009 | Unknown | Unknown | 1985 |

Job Duties: Decedent did not recall specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Tampa Armature Works Inc. & Subsidiary PO Box 3381 Tampa, FL 33601-3381 | Turner Electric Works Bush Drive Jacksonville, FL | Quality Assurance Inspector | 1986-1999 |

Job Duties: Decedent did not recall specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Staffing concepts of Florida, Inc. | Unknown | Unknown | 1999-2001 |

2435 Tech Center Pkwy

Lawrenceville, GA 30043-
1311

Job Duties: Decedent did not recall specifics of this employment. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.